UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Global Weather Productions LLC,<br>Plaintiff,<br>v.<br>TEGNA Inc.,<br>Defendant. | Case No:<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Global Weather Productions LLC ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant TEGNA Inc. ("*Defendant*") states and alleges as follows:

## INTRODUCTION

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*.

2. Michael Brandon Clement ("*Clement*") and Jonathan Petramala ("*Petramala*") created a series of Videos (the "*Videos*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3. Defendant, directly and through its wholly owned subsidiaries, owns and operates local television stations in dozens of markets throughout the United States.

4. Defendant, directly and through its wholly owned subsidiaries, owns and operates the YouTube channels of ten of its local television stations, as identified below (collectively, the "*Accounts*").

5. Defendant, without authorization, reproduced and publicly displayed the Videos in connection with its commercial activities and engaged in this misconduct knowingly and in violation of the United States copyright laws.



SLG SANDERS · LAW GROUP ·

## PARTIES

6. Plaintiff is a Texas limited liability company and maintains a principal place of business in Hutchinson County, Texas.

7. Defendant is a Delaware corporation with a principal place of business at 485 Lexington Avenue, New York in New York County, New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

9. This Court has personal jurisdiction over Defendant pursuant to N.Y. C.P.L.R. § 302(a)(1). Upon information and belief, Defendant maintains offices and personnel in this District, including at 485 Lexington Avenue, New York, New York, from which it markets and sells advertising, including national and connected-television advertising, placed across its stations' broadcast and digital platforms, including the Accounts. Defendant thus transacts business in New York, and Plaintiff's claims arise from Defendant's exploitation of the Videos on the Accounts that Defendant monetizes through that business.

10. Defendant has also litigated a prior copyright action brought by Plaintiff in this District concerning the same type of conduct without contesting personal jurisdiction or venue. *See Global Weather Productions LLC v. TEGNA Inc.*, No. 1:25-cv-06111-LJL (S.D.N.Y.) (the "Prior Action"), Answer to Second Amended Complaint, ECF No. 21 (Dec. 12, 2025) (the "Prior Action Answer") ¶¶ 10–12.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) because Defendant may be found in this District, and pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant is subject to personal jurisdiction in this District and regularly conducts business here.

## FACTS COMMON TO ALL CLAIMS

### A. Plaintiff's Copyright Ownership

12. Plaintiff is a professional videography company that documents severe weather and natural disasters, including tornadoes, hurricanes, floods, wildfires, and volcanic eruptions,



SLG SANDERS · LAW GROUP ·

frequently at considerable personal risk to its videographers.

13. Clement has approximately three decades of experience recording severe weather and for many years has chased and documented storms full time; his footage has been licensed to and broadcast by news organizations throughout the United States. Petramala is a journalist with more than two decades of experience who has focused on documenting extreme weather since 2018.

14. In July 2024, Clement and Petramala were the only media on the island of Carriacou, Grenada, when Hurricane Beryl made landfall there. Plaintiff's work has been widely published by newspapers, media organizations, editorial publications, digital-media companies, and news outlets.

15. Plaintiff has devoted substantial time, skill, effort, and expense to developing its videography business and creating a portfolio of original videos.

16. Plaintiff's Videos are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

17. Plaintiff is the copyright owner of numerous original audiovisual works protected under the Copyright Act, including the Videos that are the subject of this action.

18. Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted Videos.

19. Plaintiff derives income from the licensing and authorized use of its copyrighted works and maintains exclusive rights in the works they create pursuant to the Copyright Act.

20. Plaintiff relies upon licensing revenue derived from the authorized use of its Videos and actively protects its copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's Videos deprives Plaintiff of licensing income, diminishes the value of its copyrighted works, and interferes with the market for authorized licenses.

21. Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's Videos while many others are the



SLG SANDERS LAW GROUP

subject of pending copyright applications.

22. Plaintiff regularly licenses Plaintiff's Videos to media outlets, brands, and commercial entities for a fee.

23. Plaintiff's Videos are original, creative works in which Plaintiff owns protectable copyright interests.

24. On May 8, 2024, Plaintiff first published a Video of tornado damage in Columbia, Tennessee ("*Video 1*"). A screengrab of Video 1 is attached hereto as Exhibit 1.

25. On August 6, 2024, Video 1 was registered by the USCO under Registration No. PA 2-490-999.

26. On August 26, 2020, Plaintiff first published a Video of Hurricane Laura's intense winds flipping over an RV in Lake Charles, Louisiana ("*Video 2*"). A screengrab of Video 2 is attached hereto as Exhibit 1.

27. On October 8, 2020, Video 2 was registered by the USCO under Registration No. PA 2-303-758.

28. On September 27, 2022, Plaintiff first published a Video of intense winds during Hurricane Ian in Pinar Del Rio, Cuba ("*Video 3*"). A screengrab of Video 3 is attached hereto as Exhibit 1.

29. On December 29, 2024, Video 3 was registered by the USCO under Registration No. PA 2-519-298.

30. On December 11, 2021, Plaintiff first published a Video of the aftermath of a tornado in Mayfield, Kentucky ("*Video 4*"). A screengrab of Video 4 is attached hereto as part of Exhibit 1.

31. On January 20, 2022, Video 4 was registered by the USCO under Registration No. PA 2-339-957.

32. On May 7, 2024, Plaintiff first published a Video of the aftermath of a violent tornado in Barnsdall, Oklahoma ("*Video 5*"). A screengrab of Video 5 is attached hereto as part of Exhibit 1.

33. On August 4, 2024, Video 5 was registered by the USCO under Registration No. PA 2-490-133.

34. On October 7, 2024, Plaintiff first published a Video of individuals clearing debris from Hurricane Helene before Hurricane Milton makes a landfall ("*Video 6*"). A screengrab of Video 6 is attached hereto as part of Exhibit 1.

35. On October 16, 2024, Video 6 was registered by the USCO under Registration No. PA 2-505-478.

36. On August 19, 2025, Plaintiff first published a Video of a massive surf threatening homes ahead of Hurricane Erin in Rodanthe, North Carolina ("*Video 7*"). A screengrab of Video 7 is attached hereto as part of Exhibit 1.

37. On October 10, 2025, Video 7 was registered by the USCO under Registration No. PA 2-565-456.

38. On July 28, 2022, Plaintiff first published a Video of towns near the creeks and rivers underwater in Garrett, Kentucky ("*Video 8*"). A screengrab of Video 8 is attached hereto as part of Exhibit 1.

39. On August 10, 2022, Video 8 was registered by the USCO under Registration No. PA 2-369-591.

40. On June 13, 2024, Plaintiff first published a Video of flooded roadways in Bonita Springs, Florida ("*Video 9*"). A screengrab of Video 9 is attached hereto as part of Exhibit 1.

41. On September 1, 2024, Video 9 was registered by the USCO under Registration No. PA 2-494-948.

42. On April 14, 2026, Plaintiff first published a Video of a tornado in Wyoming, Iowa ("*Video 10*"). A screengrab of Video 10 is attached hereto as part of Exhibit 1.

43. On May 21, 2026, Video 10 was registered by the USCO under Registration No. PA 2-602-967.

44. On April 30, 2019, Plaintiff first published a Video of a tornado in Sulphur, Oklahoma ("*Video 11*"). A screengrab of Video 11 is attached hereto as part of Exhibit 1.



SLG SANDERS · LAW GROUP ·

45. On July 1, 2019, Video 11 was registered by the USCO under Registration No. PA 2-198-352.

46. On December 28, 2024, Plaintiff first published a Video of a destroyed neighborhood from a tornado and its residents looking at the damage in McCall Creek, Mississippi ("*Video 12*"). A screengrab of Video 12 is attached hereto as Exhibit 1.

47. On February 5, 2025, Video 12 was registered by the USCO under Registration No. PA 2-525-926.

48. In creating the Videos, Clement and Petramala personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the video recordings and made each and every artistic determination necessary for the creation of the works.

49. Clement and Petramala created the Videos with the intention of their being used commercially and for the purpose of display and/or public distribution.

50. Plaintiff acquired the rights in and to the Videos by way of written assignments and is the owner of all claims asserted herein.

SLG SANDERS LAW GROUP

**B. Defendant's Infringing Activity**

51. Defendant, directly and through its wholly owned subsidiaries, is the owner of the Accounts and is responsible for their content.

52. Defendant, directly and through its wholly owned subsidiaries, operates the Accounts and is responsible for their content.

53. Upon information and belief, each of the Accounts is the official YouTube channel of one of Defendant's local television stations, carries that station's name and branding, and is owned and operated by Defendant through the wholly owned subsidiary that holds that station's broadcast license from the Federal Communications Commission ("FCC") (collectively, the "Licensee Subsidiaries"), as follows:

54. The YouTube channel "ABC24 Memphis," located at https://www.youtube.com/@ABC24Memphis (the "ABC24 Account"), is the channel of WATN-

TV, Defendant's television station in Memphis, Tennessee, whose FCC license is held by Defendant's subsidiary Tegna Memphis Broadcasting, Inc. The ABC24 Account has more than 150,000 subscribers.

55. The YouTube channel "WBIR Channel 10," located at https://www.youtube.com/@WBIR10 (the "WBIR Account"), is the channel of WBIR-TV, Defendant's television station in Knoxville, Tennessee, whose FCC license is held by Defendant's subsidiary WBIR-TV, LLC. The WBIR Account has more than 240,000 subscribers.

56. The YouTube channel "12NewsNow," located at https://www.youtube.com/@12newsnow (the "12NewsNow Account"), is the channel of KBMT, Defendant's television station in Beaumont, Texas, whose FCC license is held by Defendant's subsidiary LSB Broadcasting, Inc. The 12NewsNow Account has more than 70,000 subscribers.

57. The YouTube channel "11Alive," located at https://www.youtube.com/@11Alive (the "11Alive Account"), is the channel of WXIA-TV, Defendant's television station in Atlanta, Georgia, whose FCC license is held by Defendant's subsidiary Pacific and Southern, LLC. The 11Alive Account has more than 2.8 million subscribers.

58. The YouTube channel "13 ON YOUR SIDE," located at https://www.youtube.com/@13ONYOURSIDE (the "13 ON YOUR SIDE Account"), is the channel of WZZM, Defendant's television station in Grand Rapids, Michigan, whose FCC license is held by Defendant's subsidiary Combined Communications of Oklahoma, LLC. The 13 ON YOUR SIDE Account has more than 160,000 subscribers.

59. The YouTube channel "WHAS11," located at https://www.youtube.com/@WHAS11News (the "WHAS11 Account"), is the channel of WHAS-TV, Defendant's television station in Louisville, Kentucky, whose FCC license is held by Defendant's subsidiary Sander Operating Co. I LLC d/b/a WHAS Television. The WHAS11 Account has more than 380,000 subscribers.

60. The YouTube channel "9NEWS," located at https://www.youtube.com/@9news (the "9NEWS Account"), is the channel of KUSA, Defendant's television station in Denver,



SLG SANDERS LAW GROUP

Colorado, whose FCC license is held by Defendant's subsidiary Multimedia Holdings Corporation. The 9NEWS Account has more than 570,000 subscribers.

61. The YouTube channel “WWLTV,” located at https://www.youtube.com/@wwltv (the “WWLTV Account”), is the channel of WWL-TV, Defendant's television station in New Orleans, Louisiana, whose FCC license is held by Defendant's subsidiary WWL-TV, Inc. The WWLTV Account has more than 650,000 subscribers.

62. The YouTube channel “We Are Iowa Local 5 News,” located at https://www.youtube.com/@WeAreIowa (the “We Are Iowa Account”), is the channel of WOI-DT, Defendant's television station serving the Des Moines, Iowa market, whose FCC license is held by Defendant's subsidiary Tegna Broadcast Holdings, LLC. The We Are Iowa Account has more than 100,000 subscribers.

63. The YouTube channel “KENS 5: Your San Antonio News Source,” located at https://www.youtube.com/@kens5 (the “KENS 5 Account”), is the channel of KENS, Defendant's television station in San Antonio, Texas, whose FCC license is held by Defendant's subsidiary KENS-TV, Inc. The KENS 5 Account has more than 460,000 subscribers.

64. Defendant has admitted that its stations, and the stations' social-media accounts, are owned by its subsidiaries — that is, the Licensee Subsidiaries. Prior Action Answer ¶¶ 4–5.

65. Collectively, the Accounts have more than 5.5 million subscribers, each of whom Defendant reached with the content it published on the Accounts, including the Infringements.

66. Upon information and belief, Defendant exercises centralized control over its subsidiaries' stations and the Accounts, including their news content, digital and social-media operations, and advertising sales, has the right and ability to supervise the content published on the Accounts, and receives the financial benefit of that content.

67. The Accounts are part of and used to advance Defendant's commercial enterprise.

68. Upon information and belief, the Accounts are monetized in that they display paid advertisements, including through the YouTube Partner Program, and Defendant profits from these activities.



SLG SANDERS LAW GROUP

69. Upon information and belief, the Accounts form part of Defendant's commercial enterprise and are used to attract potential customers, promote Defendant's services, increase public visibility, generate business opportunities, and enhance Defendant's brand recognition.

70. Upon information and belief, Defendant's business model depends in substantial part upon the publication, promotion, and distribution of visual-media content through the Accounts in order to attract audience attention, increase engagement, enhance brand visibility, expand audience reach, promote products and services, and generate commercial value.

71. Defendant's core business is local television news, which generates revenue principally from the sale of advertising and from retransmission consent fees paid by cable, satellite, and streaming distributors, both of which depend on the size and engagement of Defendant's audience.

72. Upon information and belief, severe-weather coverage is among the most-watched content in local television news, and Defendant publishes dramatic storm and disaster footage on the Accounts to attract and retain viewers, drive audience to its stations' broadcasts and digital platforms, and generate advertising revenue.

73. Defendant used the Videos for precisely that purpose. Defendant has admitted that it obtains revenue through advertising sales, subscription fees, and digital services. Prior Action Answer ¶ 3.

74. Upon information and belief, Defendant is a sophisticated media corporation operating in an industry in which the use of professional video footage and copyrighted content is prevalent.

75. Upon information and belief, Defendant knew or should have known that the Videos were protected by copyright, including because the Videos were of professional quality and distributed through commercial channels. Despite this, Defendant used the Videos without seeking permission or obtaining a license.

76. Upon information and belief, Defendant's personnel have significant experience in copyright matters and are familiar with industry practices requiring that videos used in commercial

content, advertising, marketing materials, publications, and social-media posts be properly licensed.

77. Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

78. Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content use or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

79. Upon information and belief, Defendant and the television stations it owns have been named as defendants in numerous copyright infringement actions in federal courts across the country, highlighting a pattern of habitual infringement and suggesting Defendant has either failed to rectify systemic issues leading to these infringements or is willfully neglecting copyright laws.

80. In the Prior Action, Plaintiff sued Defendant in this District for infringing other videos owned by Plaintiff; this action is the second action between the parties.

81. In the Prior Action, Defendant admitted that it has been a defendant in prior copyright cases and that it provides training on proper copyright practices, including when material should be licensed. Prior Action Answer ¶¶ 41, 44.

82. Defendant has therefore known of Plaintiff, and of Plaintiff's rights in its severe-weather footage, since at least May 2, 2025, when Plaintiff's counsel served Defendant with a letter concerning Defendant's infringement of Plaintiff's videos, receipt of which Defendant has admitted. Prior Action Answer ¶ 73.

83. Notwithstanding that knowledge, Defendant continued to exploit Plaintiff's works, including by reproducing and publicly displaying Video 10 on or about June 23, 2026 (Infringement 15), more than a year after receiving that letter and after Plaintiff had commenced the Prior Action.

84. Defendant's failure to adopt or effectively enforce internal copyright policies, if

SLG SANDERS · LAW GROUP ·

any, indicates *de facto* willful infringement.

85. On or about March 24, 2025, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 1 on the ABC24 Account as part of an on-line video post titled "The shift of Tornado Alley to the South | Why the Mid-South is seeing more severe weather" at URL: https://www.youtube.com/watch?v=H-mTVke6Hao ("*Infringement 1*"). A copy of a screengrab depicting Infringement 1 is attached hereto as part of Exhibit 2.

86. On or about August 27, 2020, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 2 (i) on the WBIR Account as part of an on-line video post titled "Hurricane Laura makes landfall as Category 4 storm" at URL: https://www.youtube.com/watch?v=3k4xl9iF7d0 ("*Infringement 2*"), and (ii) on the 12NewsNow Account as part of a live-streamed broadcast titled "Hurricane Laura making landfall as a catastrophic category 4 storm: Live coverage" at URL: https://www.youtube.com/watch?v=eA7xNLKyt1o ("*Infringement 3*"). Infringement 3 was viewed at least 199,215 times. Copies of screengrabs depicting Infringements 2-3 are attached hereto as part of Exhibit 2.

87. Plaintiff first observed Infringement 2 on December 19, 2025 and first observed Infringement 3 on December 24, 2025.

88. On or about September 28, 2022, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 3 on the 11Alive Account as part of an on-line video post titled "Hurricane Ian causes nationwide blackout in Cuba" at URL: https://www.youtube.com/watch?v=vy7huZaFqGc ("*Infringement 4*"). Infringement 4 was viewed at least 42,871 times. A copy of a screengrab depicting Infringement 4 is attached hereto as part of Exhibit 2.

89. Plaintiff first observed Infringement 4 on December 19, 2025.

90. On or about December 21, 2021, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 4 on the 13 ON



SLG SANDERS LAW GROUP

YOUR SIDE Account as part of an on-line video post titled "Fifth Wheel Freight sends toys to Mayfield, Kentucky tornado victims" at URL: https://www.youtube.com/watch?v=r0rwaZiC23I ("*Infringement 5*"). A copy of a screengrab depicting Infringement 5 is attached hereto as part of Exhibit 2.

91. Plaintiff first observed Infringement 5 on December 19, 2025.

92. On or about December 15, 2021, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 4 on the WHAS11 Account as part of an on-line video post titled "Louisville restaurants hold donation drives for tornado victims | What's Right" at URL: https://www.youtube.com/watch?v=GS9xFvQ3kWg ("*Infringement 6*"). A copy of a screengrab depicting Infringement 6 is attached hereto as part of Exhibit 2.

93. Plaintiff first observed Infringement 6 on October 23, 2026.

94. On or about December 13, 2021, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 4 on the 9NEWS Account as part of on-line video posts titled "Colorado Red Cross volunteers deploy to help Kentucky tornado survivors" at URL: https://www.youtube.com/watch?v=rAUuKXfFcO0 ("*Infringement 7*") and "Colorado veterans expecting to help with tornado recovery efforts" at URL: https://www.youtube.com/watch?v=IL7It_gbU1c ("*Infringement 8*"). Copies of screengrabs depicting Infringements 7-8 are attached hereto as part of Exhibit 2.

95. Plaintiff first observed Infringements 7-8 on October 23, 2026.

96. On or about May 7, 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 5 on the WWLTV Account as part of an on-line video post titled "WWL reporter and Oklahoma native gives her perspective on deadly tornado that hit Barnsdall" at URL: https://www.youtube.com/watch?v=t6-8c4UHRMo ("*Infringement 9*"). A copy of a screengrab depicting Infringement 9 is attached hereto as part of Exhibit 2.

97. Plaintiff first observed Infringement 9 on December 24, 2025.



SLG SANDERS LAW GROUP

98. On or about October 8, 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 6 on the We Are Iowa Account as part of an on-line video post titled "Gulfport, Florida braces for Milton to make landfall Wednesday" at URL: https://www.youtube.com/watch?v=T4YMRqOXVpU ("*Infringement 10*"). A copy of a screengrab depicting Infringement 10 is attached hereto as part of Exhibit 2.

99. On or about August 20, 2025, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 7 on the WHAS11 Account as part of an on-line video post titled "How Hurricane Erin is causing 'climate erosion' along the East Coast" at URL: https://www.youtube.com/watch?v=G1zi29FzEAc ("*Infringement 11*"). A copy of a screengrab depicting Infringement 11 is attached hereto as part of Exhibit 2.

100. On or about August 16, 2022, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 8 on the WHAS11 Account as part of an on-line video post titled "Drop off flood relief supplies at Louisville Kroger locations" at URL: https://www.youtube.com/watch?v=-H684Tv_lbw ("*Infringement 12*"). A copy of a screengrab depicting Infringement 12 is attached hereto as part of Exhibit 2.

101. Plaintiff first observed Infringement 12 on October 23, 2026.

102. On or about July 27, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 8 on the WHAS11 Account as part of an on-line video post titled "Beshear: State building 34 homes for Kentucky flood victims" at URL: https://www.youtube.com/watch?v=ttCnMgqyDFw ("*Infringement 13*"). A copy of a screengrab depicting Infringement 13 is attached hereto as part of Exhibit 2.

103. Plaintiff first observed Infringement 13 on October 23, 2026.

104. On or about June 14, 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 9 on the WHAS11 Account as part of an on-line video post titled "Florida bracing for more life-threatening flooding" at URL: https://www.youtube.com/watch?v=q4W7zf7qy0E ("*Infringement 14*"). As of October



SLG SANDERS LAW GROUP

28, 2026, Infringement 14 had been viewed more than 3,500 times. A copy of a screengrab depicting Infringement 14 is attached hereto as part of Exhibit 2.

105. Plaintiff first observed Infringement 14 on October 23, 2026.

106. On or about June 23, 2026, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 10 on the 9NEWS Account as part of an on-line video post titled "Colorado faces rare multi-day severe storm threat" at URL: https://www.youtube.com/watch?v=LQi-DCDt_1o ("*Infringement 15*"). As of October 28, 2026, Infringement 15 had been viewed more than 3,600 times. A copy of a screengrab depicting Infringement 15 is attached hereto as part of Exhibit 2.

107. Plaintiff first observed Infringement 15 on October 23, 2026.

108. On or about December 11, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 11 on the 9NEWS Account as part of an on-line video post titled "Why does the U.S. get so many tornadoes?" at URL: https://www.youtube.com/watch?v=-iK7ramkukI ("*Infringement 16*"). A copy of a screengrab depicting Infringement 16 is attached hereto as part of Exhibit 2.

109. Plaintiff first observed Infringement 16 on October 23, 2026.

110. On or about December 30, 2024, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed Video 12 on the KENS 5 Account as part of an on-line video post titled "Four people dead and thousands of flights delayed after severe storms hit the South over the weekend" at URL: https://www.youtube.com/watch?v=15gOCMfQDC0 ("*Infringement 17*"). As of October 28, 2026, Infringement 17 had been viewed more than 7,700 times. A copy of a screengrab depicting Infringement 17 is attached hereto as part of Exhibit 2.

111. Plaintiff first observed Infringement 17 on October 23, 2026. (hereinafter the unauthorized uses set forth above are referred to as the "Infringements").

112. In the aggregate, the Infringements have been viewed more than 266,000 times.

113. Defendant did not use the Videos to comment upon, criticize, or report on the



SLG SANDERS · LAW GROUP ·

SLG SANDERS LAW GROUP

Videos themselves. Rather, Defendant used the Videos as illustrative footage for its own news content, including stories on subjects other than the events depicted in the Videos, such as local donation drives, volunteer deployments, and relief-supply collections, and in markets far from where the Videos were recorded. This is precisely the use for which Plaintiff licenses its footage to news organizations for a fee.

114. The Infringements are copies or substantially similar copies of Plaintiff's Videos, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

115. Upon information and belief, the Videos were copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Videos.

116. The Infringements each include a URL ("*Uniform Resource Locator*") that was accessible to the public and remained available for viewing for a non-transitory period of time.

117. Upon information and belief, Defendant takes an active and pervasive role in the creation, selection, acquisition, licensing, editing, publication, posting, promotion, and display of content appearing on the Accounts, including Plaintiff's Videos.

118. Defendant exercised control over the content published on its Accounts and was responsible for selecting, uploading, and displaying the Videos. Defendant used the Videos in furtherance of its commercial interests and derived financial benefit from increased user engagement, brand promotion, and/or sales.

119. Upon information and belief, Defendant directly contributes to and exercises control over the content published on the Accounts by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives acting on its behalf (collectively, the "*Representatives*").

120. Upon information and belief, Defendant vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Accounts on Defendant's behalf.

121. Upon information and belief, the Representatives acted within the course and scope

of their agency, employment, contractual relationship, and/or other authorized relationship with Defendant when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Videos.

122. Upon information and belief, Defendant authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Accounts, including the content containing Plaintiff's Videos.

123. Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Accounts. As a result, Defendant had actual and/or constructive knowledge of the content published thereon, including the Infringements.

124. Upon information and belief, Defendant maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Accounts and exercised such control through its Representatives acting within the course and scope of their authority.

125. Upon information and belief, the Videos were intentionally and willfully selected, published, displayed, and distributed by Defendant.

126. Upon information and belief, Defendant is not entitled to the limitations on liability set forth in 17 U.S.C. §512 because the Infringements were selected, uploaded, approved, published, and/or distributed by Defendant and/or its Representatives acting within the scope of their authority.

127. Upon information and belief, the Infringements were not posted at the direction of a "user" within the meaning of 17 U.S.C. §512(c), but instead were affirmatively selected and published by Defendant and/or its Representatives.

128. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements were apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness to the



SLG SANDERS · LAW GROUP ·

Infringements on the part of Defendant.

129. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

130. Upon information and belief, Defendant exercised editorial, managerial, and operational control over the content appearing on the Accounts.

131. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Accounts and exercised and/or had the right and ability to exercise such right.

132. Upon information and belief, Defendant monitors the content on its Accounts.

133. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements.

134. Upon information and belief, the Infringements increased engagement with the Accounts and generated additional audience traffic, brand visibility, consumer interest, promotional value, and commercial value for Defendant.

135. Upon information and belief, Defendant distributed the Infringements to a broad audience through the Accounts and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

136. Upon information and belief, Defendant derived commercial value from the resulting audience engagement, publicity, promotional exposure, brand visibility, audience growth, increased traffic, and related business-development opportunities associated with the Infringements.

137. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

138. Defendant's use of the Videos harmed the actual market for the Videos.

139. Defendant's use of the Videos, if widespread, would harm Plaintiff's potential market for the Videos.

140. Defendant's unauthorized use usurps the market for licensed uses of the Videos and



SLG SANDERS LAW GROUP

undermines Plaintiff's ability to license its work to other commercial entities.

141. Despite its knowledge of Plaintiff and of Plaintiff's rights in its severe-weather footage, Defendant has neither obtained a license for nor ceased its exploitation of the Videos, thereby necessitating the commencement of this action.

142. Upon information and belief, eleven of the Infringements remain publicly displayed on the Accounts as of the filing of this action, notwithstanding Defendant's knowledge of Plaintiff's rights and the Prior Action. Such conduct evidences Defendant's knowledge of Plaintiff's rights and supports a finding that Defendant's infringement was knowing, intentional, and willful.

143. On October 28, 2026, Plaintiff preserved each of the eleven Infringements that remained publicly displayed on the Accounts by capturing it with the Internet Archive's Wayback Machine. A table of the Wayback Machine URLs and screengrabs of the archived captures are attached hereto as Exhibit 3.

144. The commencement of this action was therefore necessary to protect Plaintiff's rights under the Copyright Act.

145. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

**FIRST CAUSE OF ACTION**

***(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)***

146. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

147. The Videos are original, creative works in which Plaintiff owns valid copyrights.

148. The Videos are properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

149. Plaintiff has not granted Defendant a license or the right to use the Videos in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

150. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, distributed, adapted, and/or publicly displayed works copyrighted by Plaintiff thereby violating

one of Plaintiff's exclusive rights in its copyrights.

151. Defendant's reproduction of the Videos and display of the Videos constitutes willful copyright infringement.

152. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Videos in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Videos without Plaintiff's consent or authority.

153. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

154. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

155. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

**SECOND CAUSE OF ACTION**
***(Vicarious Copyright Infringement)***

156. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

157. Upon information and belief, the Accounts are held and operated by the Licensee Subsidiaries and by the Representatives, including the editors, producers, and social-media personnel of the stations owned by those subsidiaries, each of which directly infringed Plaintiff's copyrights by reproducing and publicly displaying the Videos on the Accounts without authorization.

158. At all relevant times, Defendant had the right and ability to supervise and control that infringing conduct, including through its ownership and control of its wholly owned subsidiaries, its centralized management of their news content, digital and social-media operations, and advertising sales, and its authority to direct the removal of content from the Accounts.

159. Defendant had an obvious and direct financial interest in the infringing conduct. Defendant derives advertising revenue and retransmission consent fees from the audiences its stations attract, and the Videos were used as a draw to attract viewers to the Accounts and to Defendant's stations, thereby increasing the advertising and other revenue Defendant received.

160. Defendant failed to exercise its right and ability to stop or limit the infringing conduct, and many of the Infringements remain displayed on the Accounts.

161. Upon information and belief, Defendant's vicarious infringement was willful, in that Defendant knew of Plaintiff's rights in its severe-weather footage and nevertheless permitted the Infringements to occur and to continue.

SLG SANDERS · LAW GROUP ·

162. As a result of Defendant's vicarious infringement, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

163. As a result of Defendant's vicarious infringement, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

164. As a result of Defendant's vicarious infringement, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyrights pursuant to 17 U.S.C. § 502.

## JURY DEMAND

165. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff respectfully requests that the Court enters a judgment finding

that Defendant has infringed on Plaintiff's rights to the Videos in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a. finding that Defendant, directly and vicariously, infringed Plaintiff's copyright interest in and to the Videos by copying, reproducing, distributing, publishing, and publicly displaying them without a license or consent;

b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d. for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e. for pre-judgment interest as permitted by law; and

f. for any other relief the Court deems just and proper.

DATED: October 29, 2026

**SANDERS LAW GROUP**

By: *<u>/s/ Craig Sanders</u>*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 144712

*Attorneys for Plaintiff*